IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EDUARDO DE JESUS LOPEZ,

Plaintiff,

v.

JOSE QUINONES CARRION,

Defendant.

CIVIL NO. 12-1352 (CVR)

## OPINION AND ORDER

### INTRODUCTION

The present case stems from a hot pursuit of a fleeing rider.   On the night of August 13, 2011, Defendant José A. Quiñones Carrión ("Defendant" or "Defendant Quiñones"), a police officer, was on patrol in the Caguas area with fellow officer Omar Cuevas Mojica ("Cuevas").   They gave chase to Plaintiff Eduardo de Jesús López ("Plaintiff"), who allegedly ran a red light while on an all-terrain vehicle.   Defendant shot Plaintiff during the chase.

Plaintiff posits he did not see the patrol car urging him to stop, and the shooting was unjustified, as he had no weapon.   A search of the premises failed to turn up such a weapon.   He also avers that Defendant failed to offer any kind of help to him, and showed an indifferent attitude towards his pain due to his gunshot wound.   As a result of the gunshot, Plaintiff claims to have been left with a partial and permanent limitation of movement of his right arm and received psychological treatment, as he developed insomnia and other psychological traumas resulting from the incident. Plaintiff alleges Defendant used excessive force against him and claims damages therefrom.

Eduardo de Jesús- López v. José Quiñones Carrión
Civil No. 12-1352 (CVR)
Opinion and Order
Page 2
_____

Defendant states he and his partner pulled alongside Plaintiff and urged him to stop after he violated the law.  Plaintiff failed to do so.  After Defendant perceived Plaintiff drew a weapon on him, and fearing for his life, Defendant used his regulation weapon, injuring Plaintiff's right clavicle.

Defendant was charged, because of this incident, with four serious infractions under Puerto Rico Police regulations and was given notice of the possibility of his dismissal from the Puerto Rico Police Department ("PRPD").  Dissatisfied with the notification, Defendant requested an informal hearing before the Examiner of the Legal Affairs Division, who recommended the dismissal of the claims.  In spite of this, Defendant was fired from his job.  Defendant then appealed said determination before the Investigation, Prosecution and Appeal Commission ("CIPA", for its Spanish acronym), which found he had acted in self-defense and ordered his reinstatement.  The PRPD appealed said determination before the Commonwealth of Puerto Rico Court of Appeals, which upheld CIPA's findings and ultimate holding.

Before the Court now is Defendant's Motion for Summary Judgment (Docket No. 72) and Plaintiff's opposition thereto. (Docket No. 75).  Defendant sustains that the instant action must be dismissed as a matter of law because Plaintiff's claims are barred by the judgment issued by the Puerto Rico Court of Appeals, which affirmed the factual determinations and conclusions made by the CIPA after a hearing on the merits concerning Defendant's use of his firearm on August 13, 2011.  In so doing, the CIPA concluded that Plaintiff pointed a gun at Defendant and therefore, Defendant acted in

self-defense.   The Court of Appeals upheld that conclusion, as well as the factual

determinations leading to it.   Therefore, Defendant contends that, because this issue has

already been ruled upon on the merits, the Court can only conclude that Defendant used

reasonable force against Plaintiff.

Plaintiff counters asserting that the requirements for *res judicata* are not met in

the case at bar, because Plaintiff was not a party, but rather, a witness in the

administrative proceeding and because his interests differed from those of the state.

## STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."   Fed.R.Civ.P. 56 (c).   Pursuant to the language of the rule,

the moving party bears the two-fold burden of showing that there is "no genuine issue as

to any material facts," and that he is "entitled to judgment as a matter of law."   Vega-

Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting

party to show that there still exists "a trial worthy issue as to some material fact."   Cortés-

Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997).   A fact is deemed

"material" if it potentially could affect the outcome of the suit.   Id.   Moreover, there will

only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable

fact-finder, examining the evidence and drawing all reasonable inferences helpful to the

party resisting summary judgment, could resolve the dispute in that party's favor." Id.

At all times during the consideration of a motion for summary judgment, the Court must

examine the entire record "in the light most flattering to the non-movant and indulge all

reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23

F.3d 576, 581 (1st Cir. 1994).

The First Circuit Court of Appeals has "emphasized the importance of local rules

similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris

USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); see also, Colón v. Infotech Aerospace Servs., Inc.,

869 F.Supp.2d 220, 225-226 (D.P.R. 2012).   Rules such as Local Rule 56 "are designed

to function as a means of 'focusing a district court's attention on what is -and what is not-

genuinely controverted.' " Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)).

Local Rule 56 imposes guidelines for both the movant and the party opposing summary

judgment.   A party moving for summary judgment must submit factual assertions in "a

separate, short, and concise statement of material facts, set forth in numbered

paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must

"admit, deny, or qualify the facts supporting the motion for summary judgment by

reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule

56 (c).    If they so wish, they may submit a separate statement of facts which they believe

are in controversy.   Facts which are properly supported "shall be deemed admitted

unless properly controverted." Loc. Rule 56(e); P.R. Am. Ins. Co. v. Rivera-Vázquez, 603

F.3d 125, 130 (1st Cir. 2010) and Colón, 869 F.Supp.2d at 226.   Due to the importance of

this function to the summary judgment process, "litigants ignore [those rules] at their

peril."   <u>Hernández</u>, 486 F.3d at 7.

## FINDINGS OF FACT

1.  On August 13, 2011, Defendant Quiñones, an officer of the PRPD's Tactical

    Operations Unit, was patrolling in the Caguas area accompanied by fellow Officer

    Cuevas.   D. Exhibit No. 2, p. 1.

2.  After chasing an individual on a motorcycle that ran a red traffic light, Defendant

    Quiñones used his service weapon against that individual, who turned out to be

    Plaintiff.   The patrol car's lights and siren were unlit.   D. Exhibit No. 2, p. 1; P.

    Exhibit 1, No. 4.

3.  On December 12, 2012, then PRPD Superintendent notified Defendant that he was

    being charged with four serious infractions under the Personnel Regulations of the

    PRPD, which could lead to his expulsion from the force. D. Exhibit 2, p. 1.

4.  Specifically, the PRPD charged Defendant with committing violations to Article 14,

    Section 14.5 of the Personnel Regulation of the Puerto Rico Police, with Serious

    Offenses # 1, # 2, # 14 and # 40(c).   D. Exhibit 1, p. 1; D. Exhibit 2, p. 1.

5.  Serious Offense # 1 charged Defendant with demonstrating manifest inability,

    ineptitude, neglect, bias or negligence in the performance of his duties, functions

    or responsibilities. D. Exhibit 1, p. 4.

Eduardo de Jesús- López v. José Quiñones Carrión
Civil No. 12-1352 (CVR)
Opinion and Order
Page 6

6. Serious Offense # 2 charged Defendant with threatening with or making use of a firearm against any person, except in the case of defense of oneself or of another. D. Exhibit 1, p. 4.

7. Serious Offense # 14 charged Defendant with disrespecting and disobeying a legal order communicated in verbal or written form by any superior officer of official of the PRPD with authority, or committing acts of insubordination or indiscipline. D. Exhibit 1, p. 4.

8. Serious Offense # 40(c) charged Defendant with improper use of abuse of authority, considering the following acts as bad use or abuse of authority: (c) attacking and/or unjustified or excessive aggression.   D. Exhibit 1, p. 4.

9. Defendant asked for an informal hearing before the Examining Officer of the PRPD of the Legal Affairs Division of Caguas.   D. Exhibit 2, p. 1.

10. The Examining Officer of the Legal Affairs Office issued a report recommending the dismissal of the charges, as it found that Defendant had not committed the alleged offenses.   D. Exhibit 2, p. 1.

11. Notwithstanding the recommendation of the Examining Officer, in a letter dated July 19, 2013, the Superintendent of the PRPD expelled Defendant from his job. D. Exhibit 2, p. 2.

12. Defendant appealed the PRPD's decision before the CIPA.   D. Exhibit No. 1, p. 1; D. Exhibit No. 2, p. 2.

13. On September 17, 2014, the CIPA held an administrative hearing.   D. Exhibit No. 1, p. 1; D. Exhibit No. 2, p. 2.

14. The CIPA reversed the PRPD's decision to terminate Defendant after making a total of seventeen (17) findings of fact and reaching conclusions of law in Defendant's favor.   D. Exhibit No. 1, pp. 1 – 12; D. Exhibit 2, p. 2

15. The CIPA ordered Defendant's reinstatement to his former position. D. Exhibit 2, p. 2.

16. As part of the administrative procedure, and after evaluating evidence and holding a full hearing, the CIPA made the following findings of fact:

   a. Defendant had worked for 20 years until the year 2013 as a Police Agent assigned to the San Juan Tactical Operations Unit of the North Region. D. Exhibit No. 1, p. 1, item 1.

   b. As of August 13, 2011 Defendant, together with agent Omar Cuevas, was exercising preventive vigilance work in a reinforcement (i.e. back up) capacity in the municipality of Caguas, Las Catalinas area. D. Exhibit No. 1, p. 1, item 2; Exhibit 2, p. 1.

   c. Around 10:30 p.m. on August 13, 2011, Defendant and Agent Cuevas were driving in their official vehicle on the service road of the Garrido Morales Avenue towards the Bairoa Sector in Caguas. They stopped at the red light and were waiting for it to change when they noticed three men that were

Eduardo de Jesús- López v. José Quiñones Carrión
Civil No. 12-1352 (CVR)
Opinion and Order
Page  8

_____

driving in the public roads, in between the cars, in four track vehicles in violation of traffic laws.   D. Exhibit 1, pp. 1-2, item 3.

d.  The drivers of these vehicles, a motorcycle and a four track, not only outraced the vehicles that were waiting for the traffic light to change, but they continued driving without stopping at the red light.   D. Exhibit 1, p. 2, item 4, Exhibit 2, p. 1.

e.  Upon noticing these violations to traffic laws Agent Cuevas, who was driving the patrol car, and Defendant prepared to intervene with these individuals. D. Exhibit 1, p. 2, item 5.

f.  While they were persecuting the four track vehicle, the driver of the four track along with his passenger fled the scene, and Agent Cuevas could only reach the motorcycle, whose driver kept on driving.   D. Exhibit 1, p. 2, item 6.

g.  Agent Cuevas was able to put the patrol car in a parallel position to the motorcycle, but its driver ignored the multiple requests to stop and continued driving.   D. Exhibit 1, p. 2, item 7.

h.  On the second occasion that the patrol car was parallel to the motorcycle, the driver drew a weapon from a purse that he was wearing crossing his chest and pointed it towards Defendant, who was the patrol car's passenger and had his window down. D. Exhibit 1, p. 2, item 7; D. Exhibit 2, p. 1.

Eduardo de Jesús- López v. José Quiñones Carrión
Civil No. 12-1352 (CVR)
Opinion and Order
Page 9

i.  Defendant was holding his regulation weapon in his hands as a protective measure.   D. Exhibit 1, p. 2, item 7.

j.  Defendant, fearing for his life as well as for the life of his partner, acted in self-defense and fired one shot which reached the driver of the motorcycle, entering through his shoulder blade and lodging in his right clavicle.   D. Exhibit 1, p. 2, item 8; D. Exhibit 2, p. 1.

k.  After the gun shot, the driver of the motorcycle (later identified as Plaintiff) finally stopped, turned off the motorcycle and put both hands on the wheel. D. Exhibit 1, p. 2, item 9.

l.  Immediately thereafter, Defendant broadcasted by radio the information about the wounded person; other patrol cars and medical emergency personnel arrived at the site and assisted Plaintiff, who was later taken to the hospital. D. Exhibit 1, p. 2, item 10.

m.  Plaintiff kept his cell phone with him, from which he made phone calls while he was at the hospital. D. Exhibit 1, p. 2, item 10.

n.  The ample area next to where Plaintiff stopped was cordoned off for the investigation, but Plaintiff's firearm, as well as the shell (bullet casing) of the shot that Defendant fired with his regulation weapon were not recovered.   D. Exhibit 1, p. 3, item 11.

o.  The place where Plaintiff stopped his motorcycle was not the same as where he was shot.   D. Exhibit 1, p. 3, item 11.

Eduardo de Jesús- López v. José Quiñones Carrión
Civil No. 12-1352 (CVR)
Opinion and Order
Page 10

p. Before this incident, Defendant had never used his regulation weapon in his twenty (20) years of service.   D. Exhibit 1, p. 3, item 12.

q. The Commonwealth's Special Investigations Bureau (hereinafter "NIE" by its Spanish acronym) assumed jurisdiction over the case, inasmuch as a police officer was involved and a person was wounded by an officer.   D. Exhibit 1, p. 3, item 13.

r. Prosecutor Jessika I. Correa González headed the investigation conducted by the NIE and interviewed Plaintiff, agent Cuevas, and Defendant, among other persons.   D. Exhibit 1, p. 3, item 13.

s. Prosecutor Jessika I. Correa González notified Defendant by means of a letter dated November 26, 2012, that the investigation concluded and that insufficient cause was found to file charges against him for infringing the Penal Code and thus, she proceeded to dismiss the charges and close the investigation. D. Exhibit 1, p. 3, item 14; D. Exhibit 2, p. 7.

t. Thereafter, Plaintiff filed a complaint for damages in the U.S. District Court for the District of Puerto Rico against Defendant and other persons. D. Exhibit 1, p. 3, item 15.

u. Defendant was granted Law 9 benefits by the Commonwealth's Department of Justice.   D. Exhibit 1, p. 3, item 16.

v. Defendant was not deprived of his regulations weapon, nor stripped from his functions until September 23, 2013, when he was expelled from the

PRPD, almost two years after the events herein transpired. Defendant was not involved in any other violent or improper act during the period that he remained an active officer after the incident with Plaintiff.   D. Exhibit 1, p. 3, item 17.

17. The CIPA found that Complainant's (referring to Plaintiff de Jesús) testimony coincided with that of the appellant (referring to Defendant Quiñones) on some issues. D. Exhibit 1, p. 6.

18. The CIPA did not give credibility to the Complainant's testimony (referring to Plaintiff de Jesús), when he expressed that he did not stop because he had not noticed that the marked vehicle that was driving close to him was a patrol car. D. Exhibit 1, p. 6.

19. The CIPA did not give credibility to the Complainant's testimony (referring to Plaintiff de Jesús) when he expressed that no signal was given by Defendant for him to stop.   D. Exhibit 1, p. 6.

20. The CIPA did not give credibility to the Complainant's testimony (referring to Plaintiff de Jesús) when he expressed that he was unarmed.   D. Exhibit 1, p. 6.

21. The CIPA found that Defendant acted in self-defense, and gave entire credibility to Defendant's version of the facts, when he stated that Plaintiff pointed to Defendant with a firearm. D. Exhibit No. 1, p. 9; D. Exhibit 2, pp. 2, 6, 7.

22. The CIPA concluded that Plaintiff was driving an all-terrain vehicle that was not apt for public roads, had no permit or license plate, without protective gear or

Eduardo de Jesús- López v. José Quiñones Carrión
Civil No. 12-1352 (CVR)
Opinion and Order
Page 12

appropriate clothing, and in total violation of the traffic laws.   D. Exhibit 2, p. 8 – 9.

23. The CIPA concluded that Defendant did not commit serious offense # 1, serious offense # 2 or serious offense # 40(c).   D. Exhibit 1, p. 10.

24. The CIPA also concluded that there was an absolute absence of evidence concerning serious offense # 14.   D. Exhibit 1, p. 10.

25. The PRPD appealed the CIPA's holding.   D. Exhibit 2.

26. On June 30, 2015, the Puerto Rico Court of Appeals considered the Resolution made by the CIPA, which reversed the PRPD's decision to terminate Defendant. D. Exhibit No. 2, p. 1.

27. The Court of Appeals affirmed the CIPA's holding in its entirety, which found, in pertinent part here, that, in shooting Plaintiff Defendant acted in self-defense.   D. Exhibit 2, p.7.

28. The Court of Appeals concluded the resolution issued by the CIPA "is reasonable and is supported by substantial evidence in the record before us", and affirmed said resolution. D. Exhibit 2, p. 7.

## LEGAL ANALYSIS

The federal full-faith-and-credit statute, 29 U.S.C. § 1738, "requires federal courts 'to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'" Patterson v. Patterson, 306 F.3d 1156, 1158 (1st Cir. 2002) (*quoting* Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104

S.Ct. 892 (1984)).   Preclusive effect is given not only to state judicial proceedings, but also to facts found by a "state agency acting in a judicial capacity [that] resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." University of Tenn. v. Elliott, 478 U.S. 788, 798, 106 S.Ct. 3220, 3226 (1986). Because the judgment at issue here was rendered by a Puerto Rico court, this court must therefore look to Puerto Rico law in order to determine the *res judicata* implications of the judgment at issue here.   Berríos v. González–Rosario, 630 F.3d 7, 11 (1st Cir.2010).

Regarding *res judicata*, Puerto Rico law states that a prior judgment will have preclusive effect when there is "the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." P.R. Laws Ann. tit. 31, § 3343.   Puerto Rico law recognizes "*res judicata*," i.e., claim preclusion, and within that, also permits issue preclusion, or "collateral estoppel by judgment."   See Texaco P.R., Inc. v. Medina, 834 F.2d 242, 245-46 (1st Cir.1987).   Issue preclusion is permitted even when identity of causes is lacking, and applies only if the facts in question were litigated in the prior action and those facts must have been essential to a valid and final judgment in the prior action. Id.; see also Morón-Barradas v. Dep't of Educ., 488 F.3d 472, 479 (1st Cir. 2007).   If the issue is determinative of the outcome of the first case, it will preclude further litigation "in a suit on a different cause of action involving *a* party to the first case."   Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414 (1980); *referring to* Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973 (1978); Estrada v. Sea-Land Serv., Inc., 939 F. Supp. 129, 134 (D.P.R. 1996).

As the United States Supreme Court has often recognized, *res judicata* and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.   Montana, 440 U.S. at 153–154.   But the Court has repeatedly recognized that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate that issue in the earlier case.   Id., at 153; Blonder–Tongue Laboratories, Inc. v. University of Illinois Found., 402 U.S. 313, 328–329, 91 S.Ct. 1434, 1443 (1971). The Court looks at each requirement in turn.

**A. Identity of the Parties.**

Although the language of the provision calls for "the most perfect identity of persons" between the first and second case, courts do not interpret the phrase "perfect identity" literally.   See, *e.g.*, Futura Dev. Corp. v. Centex Corp., 761 F.2d 33, 43 (1st Cir. 1985).   Indeed, the First Circuit has permitted issue preclusion to operate against a plaintiff who adds defendants in the second action.   See Futura, 761 F.2d at 43; Republic Sec. Corp. v. Puerto Rico Aqueduct and Sewer Auth., 674 F.2d 952, 955-56 (1st Cir. 1982); cf. De León v. Colón, 42 P.R.R. 21, 27 (1931) (permitting preclusion based on previous action that included additional defendants); Restatement (Second) of Judgments § 51(1).2.   Furthermore, "[w]here one party acts for or stands in the place of another in relation to a particular subject matter, those parties are in privity for purposes of the

Eduardo de Jesús- López v. José Quiñones Carrión
Civil No. 12-1352 (CVR)
Opinion and Order
Page 15

Puerto Rico preclusion statute."    See R.G. Fin. Corp. v. Vergara Núñez, 446 F.3d 178, 187

(1st Cir. 2006).

Here, while it is true that Plaintiff did not actually sue in the state Court case, the

Court cannot say that he was not in privity with the plaintiff therein.    Plaintiff in the

present case was an active participant in the state proceedings, and had ample

opportunity to present his case and his position.    In fact, Plaintiff was one of the case's

main witnesses.

While Plaintiff alleges that the state and Plaintiff had adverse interests in both

cases, the Court cannot agree.    The state's interest in the administrative claim was exactly

the same as Plaintiff's interest here: to curtail abuse of power by a police officer and to

determine whether such an abuse occurred against Plaintiff himself during the incident

in question.    While the case may have been brought by the Police as Defendant's

employer, the inquiry into whether such a violation or abuse occurred *precisely by

Defendant's actions against Plaintiff* is exactly what is at issue in the present case.

Plaintiff would be hard pressed to argue otherwise.

Moreover, "[i]dentity of parties and interest is required so that a party's rights and

obligations will not be determined without their knowledge or an opportunity for

participation."    Futura, 761 F.2d at 43.    Plaintiff testified in the case before the state

agency and his testimony was received there by a panel of three Commissioners who

passed judgment upon it, and later, that determination was subject to further judicial

Eduardo de Jesús- López v. José Quiñones Carrión
Civil No. 12-1352 (CVR)
Opinion and Order
Page 16

review and scrutiny by a panel of three judges from the Commonwealth of Puerto Rico

Appellate Court, who affirmed the agency's findings.

While Plaintiff attempts to imply that the appeals process was perhaps unfair

because "the Court of Appeals did not go into the findings of fact given the administrative

agency the presumption and deference administrative agencies regularly enjoy under the

law"[1], this is equally applicable to appellate review of judgments rendered by the Court of

First Instance, because an appellate court for the most part does not disturb factual

findings of those who had the opportunity to see a witnesses' demeanor first hand, which

was the case with Plaintiff here.   The CIPA found Plaintiff's testimony wanting, and so

explicitly stated.

Furthermore, the Court of Appeals stated that "a CIPA hearing is somewhat like a

*de novo* trial, where the commission has the opportunity to hear again all the evidence

submitted before the administrative authority whose ruling is being appealed, or received

different evidence and grant it the probationary value it feels it deserves.   The hearing

held before CIPA 'is in fact a formal hearing, because during said hearing all the rights of

the employee are debated definitively at the administrative level, [and in] this sense it is

equivalent to a trial on its merits.' " Quiñones Carrión v. Policía de Puerto Rico, No. 14P-

62, 2015 WL 5005408, at *5 (P.R. Cir. June 30, 2015) (*quoting* Ramírez v. Policía de P.R.,

158 D.P.R. 320, 334 (2003)).   Additionally, since CIPA has the authority to receive

evidence, it need not limit itself to the evidence submitted to the agency to reach its own

---

[1] See Docket No. 78, p. 7.

decision, and may reach its own findings of fact and conclusions of law regarding the matter being reviewed under appeal.   It has therefore been said that the actions of this agency are similar to those of a court.   Quiñones Carrión, Id. at *6 (citing Arocho v. Policía de P.R., 144 D.P.R., p. 772.

Thus, having had a full and fair opportunity before the CIPA, the Court cannot say in the instant case that Plaintiff was not afforded a full and fair opportunity for participation.   Plaintiff's argument is, thus, unavailing.


### B.  Identity of Things.

The "thing" corresponds basically to the object or matter over which the action is exercised.   The test for identity of "things" is whether a decision in the second action may contradict the prior adjudication.   The CIPA, and later the Court of Appeals for the Commonwealth of Puerto Rico, had before it several issues.   Among the issues present at the agency proceedings was the very same issue that Plaintiff has raised here, to wit, whether Defendant acted negligently in the use of his firearm on the night in question when he shot Plaintiff.   In the agency's analysis, it examined whether Defendants' use of his firearm in self-defense was correct in light of the circumstances before him that night. In the case at bar, Plaintiff alleges Defendant "was negligent in the use of unreasonable and unjustified force on the plaintiff during the intervention with him on August 13, 2011..." (Docket No. 2, Par. 14).

Plaintiff cannot prevail on his federal claim and be consistent with the prior finding of no use of excessive force, thus forcing a contradiction with the prior adjudication. Clearly, there is an identity of things present in both cases.

### C. Identity of Causes.

Similarly, "cause" refers to the main ground or origin of the action.   Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 61 (1st Cir.2000) (citations omitted). The Supreme Court of Puerto Rico, however, has stated that identity of causes is unnecessary when the defense is one of issue preclusion, rather than claim preclusion, as has been raised here.   See A & P Gen. Contractors, 10 P.R. Offic. Trans. at 996 (explaining that "collateral estoppel by judgment" is "a variant of *res judicata* where identity of causes is not necessary").   Even if collateral estoppel by judgment were to require an identity of causes, the Court would have no trouble concluding that the two cases' identical subject matter satisfies this requirement.

The following charges were brought against Defendant by the PRPD: (1) demonstrating manifest incapacity, incompetence, carelessness, partiality, or negligence in the performance of his duties, (2) threatening to use, or using a weapon against any person, except in cases of legitimate self-defense or in the defense of another person, (3) failing to follow or disobeying legal orders communicated orally or in writing by any superior officer or official of the Puerto Rico Police with authority to do so, insubordination or lack of discipline, and (4) misuse or abuse of authority, through unjustified or excessive assault and/or aggression.

Eduardo de Jesús- López v. José Quiñones Carrión
Civil No. 12-1352 (CVR)
Opinion and Order
Page 19

_____

After a hearing on the merits, and after analyzing the evidence before it, the CIPA found that Defendant acted correctly in shooting at Plaintiff.   In so doing, the CIPA necessarily found that Defendant acted in legitimate self-defense, which can only be concluded if one finds that unreasonable force was not used.

After evaluating the credibility and testimony of both Plaintiff and Defendant, as well as other witnesses, and analyzing exactly the same grievances as those alleged herein, the CIPA made several factual findings that underpinned its conclusion, among others: that Plaintiff violated the traffic laws in Defendant's presence; Plaintiff was driving an all-terrain vehicle in a public road; the all-terrain vehicle did not have a permit or a license plate; Plaintiff was weaving his way among the vehicles traveling on the road, and finally ran a red light.   In light of these circumstances, it found Plaintiff's testimony not credible. Thus, the Court must necessarily conclude that there is identity of things between the two cases.

Finally, it is evident that the same issues that are claimed in this case were litigated in the administrative forum, and that those facts were essential to a valid and final judgment in the prior action.   See Morón-Barradas, 488 F.3d at 479.   The CIPA's commissioners evaluated the evidence, heard testimony from several witnesses, including both Plaintiff and Defendant regarding the incidents of alleged use of excessive force, among others, and concluded that "the facts on evidence show that we are, without a doubt, before a case of legitimate self-defense of both his life and the life of his patrol partner. The facts described above arise from the totally legal intervention of the appellant

with a youth by the name of Eduardo de Jesús López who violated a traffic law in his presence".   (D. Exhibit 1, p. 12).   The CIPA further found that "[w]e did not find Mr. de Jesús López' testimony credible given the many inconsistencies between his words and his actions.   On the one hand he alleged that he did not stop when the squad car was following him because he feared for his safety because he was in a dark area; but on the other hand, when he decided to go out late at night to 'drive around' in a vehicle unsuitable for use in public roadways, that did not have a license plate, without a license, and without appropriate equipment and clothes, in clear violation of traffic laws, he himself was risking his life.... Rather we are dealing with a person who challenged authority at all times, to the extreme that he pointed a weapon against the officers so they would desist in their efforts to detain him". Id.

Thus, one of the main arguments evidencing the agency's conclusion was precisely the explanation for Defendants' actions vis-a-vis Plaintiff's actions, and the circumstances which led to the use of his firearm, and whether such use of a firearm was consistent with self-defense.   That it was essential to the final judgment in the prior action is evident, because as a result of the holding reached in the administrative hearing, the CIPA ordered Defendant to be reinstated to his position after being suspended.   The Court of Appeals affirmed that decision, in its entirety.

It is well-established that judicially reviewed administrative fact-finding may later estop a federal claim, even though the state administrative body itself was unable to consider the federal claim as such.   See, e.g., Gonsalves v. Alpine Country Club, 727 F.2d

27, 28–29 (1st Cir. 1984).   Thus, CIPA's, and later, the Court of Appeals factual

conclusion may be given collateral estoppel effect regardless of any inability by the

administrative body to consider Plaintiffs' federal constitutional claims.   <u>Báez-Cruz v.</u>

<u>Municipality of Comerío</u>, 140 F.3d 24, 31 (1st Cir. 1998).

In sum, a review of both complaints leads the Court to conclude that there is

identity of things (a roadway chase which culminated in a shooting of Plaintiff and the

subsequent filing of an administrative claim challenging the propriety of Defendant's

actions), of cause (an officer shooting Plaintiff), and persons (Plaintiff being the main

witness in the first case, where he had opportunity to litigate his case and later, acting as

Plaintiff in this case, while Defendant acted as a defendant in both cases).   The question,

then, is whether the judgment entered in state court precludes seeking damages for the

same assault here.   For the aforementioned reasons, the Court finds that it does and

GRANTS Defendant's Motion for Summary Judgment.

The Court does not reach the issue of qualified immunity because it has found for

Defendant.

### CONCLUSION

For the aforementioned reasons, the Court GRANTS Defendant's Motion for

Summary Judgment (Docket No. 72). As such, all claims filed by Plaintiff against

Defendant are dismissed with prejudice.

Judgment will be entered accordingly.

IT IS SO ORDERED.

Eduardo de Jesús- López v. José Quiñones Carrión
Civil No. 12-1352 (CVR)
Opinion and Order
Page  22

_____

In San Juan, Puerto Rico, on this 22nd day of April, 2016.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE